Matter of Scuderi-Hunter v County of Del. (2022 NY Slip Op 01078)





Matter of Scuderi-Hunter v County of Del.


2022 NY Slip Op 01078


Decided on February 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 17, 2022

532293
[*1]In the Matter of Dana Scuderi-Hunter, Petitioner,
v
County of Delaware et al., Respondents.

Calendar Date:January 5, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Gleason, Dunn, Walsh & O'Shea, Albany (Ronald G. Dunn of counsel), for petitioner.
Law Firm of Frank W. Miller, PLLC, East Syracuse (Frank W. Miller of counsel), for respondents.



Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Delaware County) to review a determination of respondent Delaware County Board of Supervisors terminating petitioner's employment.
Petitioner was the Commissioner of Social Services for respondent County of Delaware, appointed in January 2015 to a five-year term by respondent Delaware County Board of Supervisors (hereinafter the Board). In August 2019, respondent Tina B. Mole, the chair of the Board, filed seven disciplinary charges against petitioner, comprised of 184 specifications, alleging, among other things, disloyalty, insubordination, conduct unbecoming an employee of the County, misconduct and mismanagement. Petitioner answered the charges, made various admissions and denials, and demanded a hearing pursuant to Civil Service Law § 75. Following a nine-day disciplinary hearing, a Hearing Officer rejected certain of the specifications in the charge document, but nevertheless found that the evidence supported the charges and recommended the penalty of termination. In a December 2019 resolution, the Board adopted the Hearing Officer's findings and terminated petitioner's employment.
In June 2020, petitioner commenced this CPLR article 78 proceeding in Supreme Court seeking annulment of the Board's determination, reinstatement to her position, back pay to the date of her termination and counsel fees and costs. She asserted, among other things, that the misconduct findings were not supported by substantial evidence and that the penalty of termination was so severe as to shock the conscience. Petitioner also made various claims of legal and procedural error with respect to the Hearing Officer's determination and claimed that certain specifications in the charge document were time-barred. Following a remote proceeding, Supreme Court rejected petitioner's claims of legal and procedural error and transferred the proceeding to this Court (see CPLR 7804 [g]).
We begin by addressing the Board's resolution terminating petitioner's employment, particularly as it relates to the Hearing Officer's finding that petitioner's actions in a Family Court juvenile delinquency proceeding amounted to disloyalty and misconduct. The first "resolved" clause includes the following declaration: "[T]he Board does hereby declare that the testimony of [petitioner] at a Family Court hearing described in the transcripts of this matter is not a factor in this decision but rather that the conduct of [petitioner] in engaging in acts of lack of cooperation, disloyalty, insubordination, conduct unbecoming, and misconduct [form] the basis of this decision as found and recommended by the Hearing Officer." Considering that the Hearing Officer's findings of disloyalty and misconduct are based in significant part on petitioner's role in testifying at the aforementioned Family Court hearing, it is difficult to reconcile the Board's declaration with the Hearing Officer's [*2]recommendation other than to conclude that petitioner's role in that matter cannot serve as the basis for any finding of misconduct. Moreover, it is evident that the charges pertaining to the Family Court juvenile delinquency proceeding reflect a fundamental misunderstanding of the statutory roles of the Commissioner of Social Services, the County Attorney and the Probation Department.
By way of background, the Family Court juvenile delinquency proceeding involved a juvenile in foster care (hereinafter youth No. 2) who was under probation supervision and had allegedly engaged in criminal and disruptive behavior. As a consequence, both the Director of Probation and the County Attorney advocated for placement of youth No. 2 in secure detention pending treatment at a substance abuse facility, while petitioner took the position that youth No. 2 should be held in a less restrictive setting. That disagreement and the attendant circumstances prompted the charges of disloyalty and misconduct against petitioner. In our view, the charges relative to this disagreement misperceive petitioner's statutory authority to take the position she did in the matter.
The position of a county social services commissioner is in the noncompetitive class, and appointments are for a five-year term (see Social Services Law §§ 65 [4]; 116 [1]; County Law § 400 [4] [b]). A commissioner is subject to removal or other disciplinary action only for incompetency or misconduct in office following due notice of the charges and a hearing (see Civil Service Law § 75 [1] [c]; Social Services Law §§ 34 [4]; 116 [2]). The commissioner is "responsible for the administration of all the assistance and care for which the county is responsible" (Social Services Law § 65 [2]). As such, petitioner was imbued with authority under state law to provide for the care and custody of youth No. 2 (see Social Services Law §§ 65 [2]; 383-c; see generally Matter of Richard UU., 56 AD3d 973, 977-978 [2008]).
At the same time, the Director of Probation was responsible for supervising youth No. 2 while he was on probation (see Family Ct Act § 360.1 [2]; Executive Law § 256 [1], [4], [5]). The Director of Probation was also authorized to file a violation petition in Family Court based upon "reasonable cause to believe" that youth No. 2 had violated the terms of his probation (Family Ct Act § 360.2 [1]). In such a proceeding, the County Attorney serves as the presentment agency (see Family Ct Act §§ 254 [a]; 301.2 [12]; County Law § 501 [1]). Under County Law § 501 (1), the County Attorney is the "legal advisor" for the County and its officers, including petitioner. Notably, however, County Law § 501 (2) expressly provides: "Whenever the interests of . . . the county are inconsistent with the interests of any officer paid his [or her] compensation from county funds, the county attorney shall represent the interests of the . . . county. In such case the officer may employ an attorney-at-law at his [*3][or her] own expense unless the provisions of [Public Officers Law § 18] are applicable" (see County Law § 409; Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.7, 1.13).
The foregoing statutory provisions illustrate that petitioner, the Director of Probation and the County Attorney each had defined statutory roles in the Family Court proceeding involving youth No. 2. That petitioner opted to promote a less stringent measure than her counterparts does not, as charged by respondents, constitute a breach of loyalty owed to either the County Attorney or the Director of Probation, or vice versa. Accordingly, to the extent that the Board relied, at all, on the Hearing Officer's findings with respect to charge 1, specification Nos. 1.42 through 1.91, its determination is not supported by substantial evidence. It therefore follows that so much of the Board's determination as sustained said specifications are annulled.
Next, petitioner argues that specification Nos. 5.15 through 5.22 as set forth in charge 5 — alleging that she engaged in misconduct in 2016 when she neglected a child in her custody by withholding certain medication from the child — are time-barred and should have been dismissed. Civil Service Law § 75 (4) provides, in pertinent part, that "no removal or disciplinary proceeding shall be commenced more than [18] months after the occurrence of the alleged incompetency or misconduct complained of and described in the charges" except "where the incompetency or misconduct complained of and described in the charges would, if proved in a court of appropriate jurisdiction, constitute a crime." "[I]n making the threshold determination of whether [a] charge . . . is timely, which turns on the applicability of the exception for criminal misconduct, [this Court] refer[s] — by statutory directive — only to the allegations of misconduct 'complained of and described in the charges' . . ., without consideration of the proof or papers submitted in [the] petitioner's subsequent judicial proceeding" (Matter of Rodriguez v County of Albany, 105 AD3d 1124, 1126 [2013], quoting Civil Service Law § 75 [4]; accord Matter of De Guzman v State of N.Y. Civ. Serv. Commn., 129 AD3d 1189, 1192 [2015], lv denied 26 NY3d 913 [2015]).
Here, the charge document alleged that, in 2016,[FN1] petitioner "was under court order to provide certain mental health medications and treatment for a child assigned to foster care," but she allegedly "disagreed with the doctor's diagnosis and recommended treatment plan . . . [and] determined that [she] would not be required to provide the prescribed medications and treatment" to the child. According to the charge document, when petitioner "failed to provide the required medication," the attorney for the child petitioned Family Court to hold her in contempt. Although "a contempt citation was avoided," the charge document alleged that "[t]he actions of . . . [petitioner] amount to child neglect in that much needed medication [*4]beneficial to the child . . . was deprived."
Given that this charge of misconduct is based upon actions that petitioner undertook in 2016 — over 18 months before the charges were filed against her — the issue of whether the charge was timely brought distills to whether the allegations, if proven, would constitute a crime. Respondents assert that petitioner's conduct amounted to the crime of endangering the welfare of a child, which, as relevant here, may be established by proof that a "person legally charged with the care or custody of a child . . . fail[ed] or refuse[d] to exercise reasonable diligence in the control of such child to prevent him or her from becoming . . . a 'neglected child,' . . . [as] defined in [Family Ct Act article 10]" (Penal Law § 260.10 [2]). A neglected child, in turn, includes a child "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of . . . [a] person legally responsible for his [or her] care to exercise a minimum degree of care . . . in supplying the child with . . . medical . . . care" (Family Ct Act § 1012 [f] [i] [A]). A finding of neglect requires proof of actual or imminent impairment to the child arising from the custodian's conduct (see Matter of Aiden LL. [Tonia C.], 191 AD3d 1213, 1215 [2021]).
Although the charge document neither specified the prescribed medication that was allegedly withheld from the child nor alleged that the child was actually impaired or at imminent risk of so becoming due the withholding of such medication, it stated that the medication was "required," "much needed" and "beneficial to the child." In our view, these statements, when read in conjunction with the allegations that petitioner was under court order to provide certain medications and treatment to the child and the subject medication was prescribed by a doctor, were sufficient to allege actual or imminent impairment to the child due to the withholding of the medication. Accordingly, when considering only the allegations as described in the charge document pertaining to petitioner's withholding of prescribed medication to a child in her care, we conclude that they sufficiently allege the crime of endangering the welfare of a child based upon medical neglect, and the Hearing Officer properly considered this charge in his analysis of whether petitioner engaged in misconduct (compare Matter of De Guzman v State of N.Y. Civ. Serv. Commn., 129 AD3d at 1192).
That said, the record does not actually support a finding of misconduct as it relates to this charge. Pursuant to Civil Service Law § 75 (1), a civil service employee "shall not be removed or otherwise subjected to any disciplinary penalty . . . except for incompetency or misconduct shown after a hearing upon stated charges." The standard of review of such a determination made after a disciplinary hearing is whether it is supported by substantial evidence (see Matter of Snowden v [*5]Village of Monticello, 166 AD3d 1451, 1453 [2018]; Matter of Bruso v Clinton County, 139 AD3d 1169, 1171 [2016]).
During the disciplinary hearing, petitioner testified that when she began her tenure as the County Commissioner of Social Services in 2015, the subject child was approximately five years old, in foster care and struggling with behavioral and mental health issues. The child's foster parent secured an appointment for the child to be psychiatrically evaluated, but the earliest appointment date that could be obtained was four months away. Testifying that she felt that the matter could not wait, petitioner obtained an evaluation of the child on October 30, 2015 with Betsy Berkovich — a doctor at Capital Care Medical Group, LLC, Developmental/Behaviorial CR.[FN2] Petitioner explained that, upon evaluating the child, Berkovich recommended that the child undergo cognitive behavioral therapy — testimony that is corroborated by Berkovich's report from the evaluation. Given that recommendation, petitioner arranged for the child to receive cognitive behavioral therapy with Suzanne D'Aversa, a licensed clinical social worker.
Thereafter, in January 2016, petitioner received a request from Kenneth Gordon — a doctor who had been treating the child since November 2015 — to prescribe the child Lexapro, an antidepressant, in addition to two other medications that the child was already receiving. Petitioner testified that, before signing off on Gordon's request, she contacted D'Aversa and asked her whether she had "ever know[n] this medication being prescribed to a child." According to petitioner, D'Aversa told her that Lexapro "sounds like a lot for a five-year-old child," which prompted petitioner to request that D'Aversa contact Gordon directly "for the purposes of having a cohesive treatment plan."
As reflected in the record, the attorney for the child filed motions in Family Court seeking to compel petitioner to comply with the recommendations of the child's treatment providers, and subsequently filed contempt motions against her alleging that she had violated the court's prior orders. Following an appearance before Family Court on February 10, 2016, the court issued an interim order directing petitioner to "facilitate the consultation of . . . Gordon and . . . D'Aversa regarding [the child's] current medication plan and . . . obtain their respective opinions regarding the same" by February 12, 2016. In the event that the providers were in agreement regarding the medication, petitioner was directed to "cooperate therewith and to comply with any and all recommendations." Petitioner ultimately approved the administration of Lexapro after Gordon and D'Aversa consulted, but she conceded on cross-examination that the approval may have been delayed by a few weeks. Notably, Amy Merklen, the County Attorney at the time, confirmed during her testimony at the disciplinary hearing that the Lexapro was issued "shortly after" entry of the February 2016 [*6]order.
As the record demonstrates that Family Court sanctioned petitioner's plan to have the child's treatment providers consult and consent before providing the medication, and petitioner ultimately administered the medication to the child after the consultation, we conclude that substantial evidence does not support the Hearing Officer's finding that petitioner's conduct in initially withholding the Lexapro from the child constituted misconduct (see generally Matter of Meaney v Village v Johnson City, 95 AD3d 1640, 1641-1642 [2012]; Matter of Rauschmeier v Village of Johnson City, 91 AD3d 1080, 1083 [2012], lv denied 19 NY3d 802 [2012]). Therefore, so much of the determination as sustained charge 5, specification Nos. 5.15 through 5.22 is annulled.
There is, however, substantial evidence in the record to sustain other misconduct findings made by the Hearing Officer. In that regard, the Hearing Officer sustained specifications alleging that petitioner engaged in highly inappropriate behavior when a caseworker for the Delaware County Department of Social Services (hereinafter DSS) disagreed with her regarding a youth under probation supervision (hereinafter youth No. 1). To that end, Angela Barnes, a former caseworker for DSS, testified that, in May 2019, she was primarily tasked with working with families whose children were having issues in school. Upon learning of a situation with youth No. 1 — a student who was under probation supervision — Barnes conducted a home visit of his family on May 13, 2019. During the home visit, Barnes became concerned that youth No. 1, who had a substance abuse history, may have ingested an illegal substance. Youth No. 1 subsequently became violent, and Barnes was directed by a supervisor to transport him to the Probation Department, where he would receive a drug test.
Upon reaching the Probation Department and witnessing youth No. 1's violent reaction to an attempt to search his backpack, Barnes called petitioner and explained to her that the County's Director of Probation intended to ask Family Court to place youth No. 1 in secure detention. Rather than agreeing with the position of the Director of Probation, petitioner instructed Barnes to convey DSS's position that youth No. 1 should be placed in foster care. Barnes expressed to petitioner that she did not agree with that assessment and that she thought youth No. 1 should be placed in detention. According to Barnes, petitioner became angry upon hearing her opinion and raised her voice, leading Barnes to feel that she "was being yelled at over the phone for having [her] own opinion." The Director of Probation also testified to this effect, emphasizing that he could hear petitioner screaming at Barnes over the phone. Barnes testified that, in response to expressing her opinion, petitioner told her that another caseworker would relieve her of her duties with respect to youth No. 1.
Barnes further testified that, in a subsequent conversation, petitioner [*7]told Barnes that she would be held personally accountable for any secured detention sanctions imposed on youth No. 1, which Barnes interpreted as a threat. Petitioner also angrily asked for Barnes' case notes in front of other employees and Barnes was subsequently informed that she would no longer be assigned to children involved with the Probation Department. She was also hastily reassigned from her position working with struggling students at a school and was not allowed to introduce a new caseworker to the families of such students. Linda Pinner, the Delaware County Personnel Officer, investigated Barnes' complaint against petitioner regarding this treatment and ultimately concluded that petitioner's conduct in reassigning Barnes' duties was an act of retaliation.
There was testimony from multiple witnesses that this type of treatment of employees was, unfortunately, not an isolated event. Indeed, there was ample testimony that petitioner created a hostile work environment by "screaming" at, being "abusive" toward and belittling employees, with the personnel department receiving multiple complaints from different sources expressing concern that employees would be "targeted" and "retaliat[ed]" against if they did not do "exactly what they were told to do by" petitioner.[FN3] Consistent with her statutory authority (see County Law § 450 [2] [d]), Mole met with petitioner several times to address these complaints, revealing that, instead of acknowledging the inappropriateness of her behavior, petitioner acted "[t]otal[ly] surprised" and wanted to know the names of the employees who had made the complaints, allegedly to be able to address them with the employees directly. Concerned that petitioner would retaliate against the complainants, Mole declined to give petitioner their names, noting that the complainants had relayed to her that they shared that concern. Mole maintained that she continued to receive employee complaints about petitioner even after meeting with petitioner to address the issues. There was also testimony that petitioner failed to immediately turn over certain property belonging to the County after being placed on leave in July 2019 despite being made aware of her obligations in that respect. As such, there is substantial evidence supporting the misconduct findings as it relates to these specifications.
Turning to the penalty, petitioner argues that her termination was disproportionate to the sustained charges. "In evaluating whether the penalty [imposed] is excessive, this Court must consider whether, in light of all the relevant circumstances, the penalty is so disproportionate to the charged offenses as to shock one's sense of fairness. This calculus involves consideration of whether the impact of the penalty on the individual is so severe that it is disproportionate to the misconduct, or to the harm to the agency or the public in general" (Matter of Young v Village of Gouverneur, 145 AD3d 1285, 1288 [2016] [internal [*8]quotation marks, brackets and citations omitted]). Given petitioner's creation of a hostile work environment, her retaliatory conduct towards Barnes and her failure to turn over County property, we cannot conclude that the penalty of termination was "so disproportionate to the charged offenses as to shock one's sense of fairness" (id. [internal quotation marks and citations omitted]).
We have considered petitioner's remaining contentions and find them to be unavailing.[FN4]
Egan Jr., J.P., Pritzker and Reynolds Fitzgerald, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as sustained charge 1, specification Nos. 1.42 through 1.91, and charge 5, specification Nos. 5.15 through 5.22, and, as so modified, confirmed.



Footnotes

Footnote 1: The charge document does not actually specify the year when such conduct occurred, but the parties agree that it was in 2016.

Footnote 2: Following a permanency hearing, Family Court issued an order in December 2015 directing, among other things, that the Delaware County Department of Social Services follow the recommendations made by the Capital Care Pediatric Development/Behavioral Specialty Center in Latham, Albany County as it pertained to the child.

Footnote 3: Although petitioner called several character witnesses who gave testimony praising her managerial style and refuting the allegations that she belittled employees, such conflicting testimony constituted a credibility determination for the Hearing Officer to resolve.

Footnote 4: We are mindful of petitioner's argument that the Board was biased insofar as two Board members — Mole and James Eisel Sr. — testified against her at the disciplinary hearing. However, according to Mole's affidavit, neither she nor Eisel voted on the resolution terminating petitioner. As Mole and Eisel abstained from voting, petitioner's argument in this respect fails (see Matter of Birch v County of Madison, 123 AD3d 1324, 1327 [2014]).